IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:06-CV-279-DCK

| | |
|---|---|
| HILDA B. JACKSON, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> CAROLINAS HEALTHCARE SYSTEM , ) </br> ET AL. ) </br> ) </br> Defendants. ) </br> _____ ) | ORDER |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion for Summary Judgment" (Document No. 46) and "...Memorandum In Support Of Its Motion..." (Document No. 47) filed April 16, 2007; "Plaintiff's Memorandum In Response To The Defendants' Motion For Summary Judgment" (Document No. 52) filed May 11, 2007; and "Defendants' Reply To Plaintiff's Memorandum In Response To Their Motion For Summary Judgment" (Document No. 57) filed May 25, 2007. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition.

Having carefully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hilda B. Jackson ("Plaintiff") was hired by Carolinas Healthcare System ("CHS") as a purchasing assistant on July 13, 1997. After about a year, Plaintiff resigned from CHS to pursue another opportunity. Plaintiff returned to CHS as a patient account representative in 1999, at which time she had duties to contact patients by telephone to address various billing issues. At the times relevant to this lawsuit, Jennifer Passantino

was Plaintiff's supervisor, Charles Case was her manager, and Jeffrey Norville was the director of her department.

It is undisputed that Plaintiff received a verbal warning from Jennifer Passantino in March 2005 for excessive tardiness. On March 2, 2005, Ms. Passantino filled out a CHS "Counseling For Improved Performance" form describing the verbal warning and noting that the Plaintiff declined to sign the form and thereby acknowledge the incident had been reviewed with her. (Document 47-3, Exhibit 18).

On July 22, 2005, Plaintiff received an annual CHS "Performance Appraisal." (Document No. 47-3, Exhibit 20). The appraisal indicated that Plaintiff was a "Successful Performer" and that her overall performance was deemed "competent." Id. The review also included comments from Mr. Case stating that Plaintiff should work to improve her communication skills with her management team. Plaintiff did sign and acknowledge receipt of this appraisal. Also on July 22, 2005, Plaintiff drafted two brief memos to Human Resources which stated that she disputed this review, as well as the one from 2004, and that she had signed the review "under distress" because it would be considered insubordination if she did not sign. (Document 47-3 at 17-18).

On November 23, 2005, Plaintiff filed a "Charge of Discrimination" with the Equal Opportunity Employment Commission ("EEOC"). (Document No. 47-3 at 24-25). Plaintiff claimed in her Charge that she "was issued an unsatisfactory performance appraisal" and that "after making her objections known ... was threaten[ed] with immediate discharge, if [she] did not sign the appraisal." Id. Plaintiff's Charge also alleges that she had been denied transfer requests and was "subject to differential treatment with regards to scheduled hours of work, productivity standards and attendance." Id. Plaintiff concludes

2

that "the treatment I have been afforded is discriminatory and is based upon my race American Indian" and that her civil rights were being violated. On May 23, 2006, EEOC issued a "Dismissal and Notice of Rights" as to Plaintiff's charge of discrimination. (Document No. 1, Attachments).

In April 2006, Ms. Passantino received a complaint from a patient regarding Plaintiff. Mr. Norville and Mr. Case reviewed a recording of the underlying call between the patient and Plaintiff and determined that Plaintiff had not handled the call correctly. On April 24, 2006, Plaintiff was issued a reprimand, which she refused to sign or submit comments on, even though the language of the document states "[y]our signature indicates only that this incident has been reviewed with you and does not indicate agreement with the action take." (Document No. 47-3, Exhibit 25).

On July 6, 2006, Plaintiff received another reprimand following a complaint by another patient. Plaintiff also refused to sign that reprimand. Mr. Chase and Ms. Passantino scheduled a follow-up meeting for July 20, 2006, to discuss and review findings and Plaintiff's progress, but Plaintiff refused to attend that meeting. Plaintiff was instructed that attendance at the July 20th review was not voluntary and refusal to attend was a terminable offense; she nevertheless still refused to attend the July 20th meeting. Only July 7, 2006, Plaintiff was terminated by CHS for insubordination.

Plaintiff filed her Complaint (Document No. 1) with this Court on July 10, 2006, against Carolinas Healthcare System, Jeffrey Norville, Charles Case, Jennifer Passantino and Helen Moore (collectively, "Defendants"), alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff contends she suffered discrimination with respect to her race, and that this discrimination is based on the

3

following acts: termination of her employment, denial of equal work, general harassment, and other acts, including "double standards in the workplace." (Document No. 1). Plaintiff's Complaint contends that she suffered mental anguish, as well muscloskeletal disorders, since January 27, 2003, as a result of the alleged discrimination. Plaintiff's Complaint requests the relief of "One Million dollars ($1,000,000.00) to seek medical treatments for Musculoskeletal disorder outside Carolinas Healthcare System." Id.

On August 26, 2006, Plaintiff filed a second "Charge of Discrimination" with the EEOC alleging that her employment termination was in retaliation for her previous EEOC charge. The EEOC issued a "Dismissal and Notice of Rights" as to Plaintiff's second charge on October 31, 2006. On January 3, 2007, Plaintiff filed an addendum to her Complaint.

On April 16, 2007, Defendants filed their motion for summary judgment (Document No. 46). On May 18, 2007, the Court *sua sponte* issued an Order (Document No. 54) requiring the parties to appear before the undersigned on June 19, 2007, prepared to discuss the status of the case and to argue the summary judgment motion. The undersigned viewed that hearing as an opportunity to question the litigants, and most importantly, a chance for them to be heard and offer their best arguments.

On June 4, 2007, Plaintiff moved to indefinitely continue the hearing "due to her employment and financial hardship." (Document No. 58). On June 14, 2007, the undersigned cancelled the status and motions hearing and determined that the parties pleadings provided a sufficient basis to reach a decision on the summary judgment motion. (Document No. 60). No further hearing was scheduled.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C. 2000) (citations omitted). The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III. DISCUSSION

Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), codified as 42 U.S.C. § 2000e et seq., makes it an unlawful employment practice for an employer

> to fail or refuse to hire or to discharge any individual, or

5

> otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits discrimination by an employer against any individual because such individual "has opposed any practice made an unlawful employment practice" by Title VII or "participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a).

In the Complaint, Plaintiff complains of discrimination in the form of termination of employment, denial of equal work, general harassment and other acts, including "double standards in the workplace." Plaintiff contends that as a result of Defendants' actions she has suffered mental anguish and musculoskeletal disorders. She also subsequently claimed that she was the victim of a hostile work environment and that she was terminated in retaliation for her original complaint of discrimination. Plaintiff's claims fall into three general categories of Title VII discrimination claims – disparate treatment, hostile work environment, and retaliation. The undersigned will address each of these in turn below; however, as an initial matter, the undersigned will address Plaintiff's claims against the individuals named in the lawsuit.

### A. Individual Defendants

As noted above, in addition to CHS, Plaintiff has named her supervisor, Jennifer Passantino, her manager, Charles Case, the director of her department, Jeffrey Norville, as well as Helen Moore, human resources representative, as defendants in this lawsuit. Defendants' motion for summary judgment argues that "it is well established that 'supervisors are not liable in their individual capacities for Title VII violations.'" (Document

No. 47 at 7) citing Lissau v. Southern Food Service, Inc., 159 F.3d 177 (4th Cir. 1998); Baird v. Rose, 192 F.3d 462 (4th Cir. 1999). The undersigned agrees.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion sex, or national origin." 42 U.S.C. § 2000e-2(a). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees..." and "any agent of such a person...." 42 U.S.C.. § 2000e(b). The statute does not define the term "agent," however the Fourth Circuit in Lissau held:

> This court recently interpreted a similar statutory definition of employer. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994). In Birkbeck, we addressed whether individual officers and supervisors were liable for violations of the Age Discrimination in Employment Act (ADEA). See 29 U.S.C. § 621. The ADEA defines employer to include certain persons who employ twenty or more workers and "any agent of such a person." Id. § 630(b). We concluded that the inclusion of "agent" did not signal a congressional desire to impose liability on individual supervisors. Instead, it simply represented "an unremarkable expression of respondeat superior-that discriminatory personnel actions taken by an employer's agent may create liability for the employer." Birkbeck, 30 F.3d at 510. We also noted that it would make little sense to hold a single individual liable when Congress had expressly exempted all companies employing fewer than twenty persons from the statute ... The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer. Id.

Lissau, 159 F.3d at 180.

It is of further note that excerpts from Plaintiff's deposition cast serious doubt as to whether the individual defendants were even aware of Plaintiff's race. (Document No. 47-2 at 21, 41). When questioned as to whether Helen Moore discriminated against her on the

7

basis of race, Plaintiff replied "I don't know Helen whatsoever." Id. Later, when asked whether she had any reason to believe Mr. Case or Mr. Norville had knowledge of her race, Plaintiff answered "I don't know. I really can't answer that question. I don't know." Id. It stretches logic for Plaintiff to accuse these individuals of racial discrimination and yet admit doubt as to whether they were even aware of her race.

In her response to the summary judgment motion on the issue of the merit of her claims against the individual defendants, the Plaintiff could only offer a rhetorical question - "[h]ow can a layman such as the Plaintiff be expected to know such particular points of law?" She did not further refute or challenge Defendants' position that the individuals could not be found liable.

For the foregoing reasons, as to Plaintiff's claims against the individual defendants, summary judgment shall be awarded to the Defendants. We now turn to Plaintiff's claims as construed against Carolinas HealthCare System ("CHS" or "Defendant").

## B. Disparate Treatment

There are two means by which an employee can establish a violation of Title VII by disparate treatment. The first means is by

> demonstrating through direct or circumstantial evidence that ... discrimination motivated the employer's adverse employment decision. The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (citing 42 U.S.C. § 2000e-2(m) and Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989)). If the employee produces sufficient evidence for a reasonable jury to conclude that race or sex was a motivating factor, See Hill, 354 F.3d at 285,

> the burden of persuasion shifts to the employer to prove that it would have reached the same determination without any discriminatory animus.... The determination of whether a plaintiff has satisfied this evidentiary threshold is a decision for the district court after it has reviewed the evidence, which ultimately hinges on the strength of the evidence establishing discrimination.

Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (internal marks and citations omitted), abrogation on other grounds recognized by, Hill, 354 F.3d at 284-85.

In the absence of such evidence, the employee must proceed under the analytical framework first enunciated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As the Fourth Circuit has concisely explained the McDonnell Douglas framework,

> the plaintiff-employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her.

Evans v. Tech. App. & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1999) (internal marks and citations omitted).

Because the plaintiff always "bears the ultimate burden," a defendant employer may be entitled to summary judgment *even if* the plaintiff has established a prima facie case and shown that the explanation proffered by his employer is pretextual. See Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

> Even when a plaintiff demonstrates a prima facie case and

9

> pretext, [her] claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if no rational factfinder could conclude that the action was discriminatory. But absent such evidence, courts may not require a plaintiff who proves both a prima facie case and pretext to produce additional proof of discrimination in order to survive a defendant's motion for summary judgment. This is so because it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.

Id. (internal marks and citations omitted).

Importantly, regardless whether a plaintiff-employee brings direct or circumstantial evidence or proceeds under the McDonnell Douglas framework, the real issue

> in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait actually motivated the employer's decision. The protected trait must have actually played a role in the employer's decision making process and had a determinative influence on the outcome.

Hill, 354 F.3d at 286 (internal marks and citations omitted) (quoting in part Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000)).

Plaintiff has failed in this case to present either direct or indirect evidence that race was a motivating factor in any of the employment actions she complains of as disparate treatment: work hours, productivity standards, attendance, denial of transfer or handling of performance appraisals. See Hill, 354 F.3d at 284. As such, the undersigned will proceed to analyze Plaintiff's claims of disparate treatment using the McDonnell Douglas framework.

The Defendant argues first that Plaintiff failed to bring several of her claims within

the applicable statute of limitations period, and second, that even assuming that were not true, she cannot make a prima facie case of disparate treatment with respect to her claims.

### i. Statute of Limitations

Title VII, as set forth in 42 U.S.C. § 2000e-5(e)(1), states that

> [a] charge filed under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred....

42 U.S.C. § 2000e-5(e)(1). As the Supreme Court made clear in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "[a] claim is time barred if it is not filed within these time limits. .... [The word] "shall" makes the act of filing a charge within the specified time period mandatory." Id. at 114 (citation omitted). The Supreme Court further explained that a discrete act – specifically including termination, failure to promote, denial of transfer or refusal to hire – occurs "on the day that it happen[s]." Id. (internal marks omitted). Use of a company's formal internal grievance procedure does not toll the statute of limitations. Compare Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 234-35 (1976) (grievance procedures under collective bargaining agreement) (as cited in National R.R. Passenger Corp., 536 U.S. at 114).

Plaintiff filed her first Charge Of Discrimination on November 23, 2005. As such, discrete incidents that occurred prior to May 27, 2005 – 180 days prior to the filing of the Charge – are time-barred by the statute. Defendant notes that Plaintiff is not alleging that she was wrongfully denied transfers at any time in 2005, and in fact admits she withdrew her application for a new position in 2005. (Document No. 47-2 at 28-29). Likewise, Plaintiff admitted in her deposition that the work hours she complained of "stopped July the 1st 2003." Id. With respect to the disparate productivity standards Plaintiff complained of,

11

Plaintiff alleged she was the only one responsible for handling voice mail, but admitted she had "always" handled this duty - beginning in March 2003. Finally, Plaintiff's complaint regarding attendance involved cigarette breaks on May 12, 2005, and is also time-barred.

Based on the foregoing, because of the statute of limitations, Plaintiff cannot recover for any discrimination against her based on the above allegations of disparate treatment stated in her first charge of discrimination.

### ii. **Application of McDonnell Douglas Framework**

Plaintiff's claim fails even if it is not time-barred. In order to establish a prima facie case of discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show that she: (1) is a member of a class protected by Title VII; (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against these other employees. Manning v. Foodarama, Inc., 195 F.Supp. 2d 741, 744 (D.Md. 2002) (quoting Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993)) (citing Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.1985)).

It is undisputed that Plaintiff is a member of a protected group; however she has failed to articulate how she has engaged in conduct comparable to other employees and then faced more severe disciplinary matters as a result of that conduct. First, even if Plaintiff's claim related to the cigarette breaks is not time-barred, Plaintiff admits that issue was an isolated event for which she received no discipline. (Document No. 47-2 at 36). The Fourth Circuit has held that "it is typically not permissible to infer the existence of disparate discipline by comparison with one single prior event ..... [a]ccordingly, '[t]he

question confronting a judge faced with determining whether a prima facie case under Title VII has been made is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer.'" Cook, 988 F.2d at 512. Additionally, Plaintiff has not claimed that other employees engaged in similar behavior and somehow received different treatment as a result.

Next, questions surrounding Plaintiff's July 21, 2005 performance appraisal are admittedly not time-barred. Nevertheless, the claims to disparate treatment as to the appraisal are without merit. Plaintiff's EEOC charge alleges that she was forced to sign the appraisal, denied the opportunity of rebuttal, threatened with discharge, and most importantly, her Caucasian co-workers were not subject to the same treatment. (Document No. 47-3, Exhibit 21).

Defendants argue that Plaintiff conceded in her deposition that she was not aware of any Caucasian co-workers who were permitted not to sign their performance review. (Document 47-2 at 40). Therefore, Defendant contends that "not only is there no basis for claiming that Plaintiff was treated differently on the basis of her race, but she also affirmatively represents that she was treated the same as all other CHS employees." (Document No. 47 at 10). Plaintiff has also conceded that she was not denied the opportunity of rebuttal, and in fact submitted two written responses to her 2005 performance appraisal. (Document No. 47-2 at 25, Document 47-3 at 17-18).

Plaintiff has claimed disparate discipline based on the feedback in her performance appraisal that she should assist patients in calling insurance companies. According to Plaintiff, other co-workers were not subject to the same instruction. Again, this issue represents an isolated incident and is therefore insufficient to establish discrimination.

13

There is little or no basis for establishing that a remark on a performance appraisal amounts to discipline at all. Furthermore, Plaintiff, whose co-workers included three African-Americans and one Caucasian, has not alleged that any co-workers received preferential treatment based on race. The fact that Plaintiff was reprimanded and counseled to improve after receiving complaints from patients does not form a basis for discrimination, unless she could show co-workers received similar complaints and were not likewise reprimanded. The record is clear that there had been complaints from patients regarding Plaintiff, but similar evidence of complaints against Plaintiff's co-workers has not been mentioned; thus, no foundation exists for a claim of disparate treatment in comparison to Plaintiff's co-workers.

The undersigned concludes that Plaintiff has not met her burden of establishing a prima facie case of disparate treatment. Following the McDonnell Douglas framework, Defendant has also articulated legitimate, nondiscriminatory reasons for its actions. Defendant is entitled to summary judgment on the claims of discrimination based on disparate treatment.

### C. Hostile Work Environment

As discussed above, Title VII prohibits discrimination with respect to any terms, conditions or privileges of employment based on an individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). In Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986), the Supreme Court confirmed that the statutory language "terms, conditions, or privileges of employment" included the environment in which an employee was to work. See id., 477 U.S. at 65-66. In other words, a plaintiff may prove a violation of Title VII by showing that discrimination based on his race or sex "has created a hostile or abusive work

14

environment." Id. at 66.

Because behavior that creates a hostile work environment "does not present a factual question of intentional discrimination which is at all elusive," Henson v. City of Dundee, 682 F.2d 897, 905 n. 11 (11th Cir. 1982), the McDonnell Douglas burden-shifting framework is generally inapplicable to hostile environment cases. See Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983), abrogation on other grounds recognized by Mikels v. City of Durham, N.C., 183 F.3d 323, 329, 329 n. 4 (4th Cir. 1999); Henson, 682 F.2d at 905 n. 11. Instead, to survive summary judgment on claims of a racially hostile work environment, a plaintiff must forecast evidence that: (1) she experienced unwelcome harassment; (2) the harassment was based on race, color, religion, national origin, or age; (3) the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) a basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006). As the Fourth Circuit has explained,

> [t]he degree of hostility or abuse to which [the plaintiff] was exposed can only be determined by examining the totality of the circumstances. Relevant considerations may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive.

Id. (internal marks and citations omitted).

In addition to establishing that a racially hostile work environment existed, the Plaintiff must also establish sufficient basis for imposing liability upon the employer. Id. An employer will not be subject to liability for a hostile work environment if the employer

15

can show, by a preponderance of the evidence, that

> (1) it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Id. at 186 (internal marks and citations omitted).

To the extent that Plaintiff's allegations of harassment attempt to assert a hostile work environment claim, the undersigned is not convinced that her allegations support such a claim. Defendant contends that she has only presented bald allegations of harassing behavior. Even if Plaintiff suffered harassment, which the Court does not assume, she has not forecast any evidence to show that the harassment was based on her race, color, religion, national origin, or age, or that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." See Baqir, 434 F.3d at 745-46.

In fact, as Defendant points out, Plaintiff acknowledged in her deposition that in her time at CHS she never felt like people had made negative comments about her heritage or race and she does not know if Mr. Case or Mr. Norville were even aware of her race. (Document No. 47-2 at 40-41). Additionally, Plaintiff has failed to forecast any evidence that her treatment in the workplace differed from other employees in similar situations, much less that she was ever treated differently or harassed on the basis of her race.

Defendant, on the other hand, has presented legitimate, non-discriminatory reasons for the actions it has taken. Defendant's reprimands following patient complaints were reasonable; Defendant made efforts to facilitate transfer requests that were ultimately declined by Plaintiff; Defendant warned that insubordination would lead to termination and

16

it fulfilled that prediction; and generally, non-discriminatory reasons are apparent for Plaintiff's treatment in the workplace. See Baqir, 434 F.3d at 747 (concluding that the plaintiff's complaint of rude treatment by his supervisor and colleague failed to sustain his hostile work environment claim because he failed to prove that their conduct was discriminatory); Bass v. E.I.Dupont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003)(concluding that plaintiff's allegations regarding callous behavior by her supervisors failed to establish a hostile work environment claim since the problems she listed in her complaint did not seem to involve issues with gender or race); Causey v. Balog, 162 F.3d 795 (4th Cir.1998)(concluding that without specific evidentiary support that the alleged acts of mistreatment were based on race or age, the plaintiff's conclusory statements failed to establish an actionable claim for harassment).

In examining the totality of the circumstances here, the undersigned does not find evidence of a hostile work environment. At worst, there seems to have been a clash of personalties, that while unfortunate for both parties, does not amount to actionable racial discrimination. As the Fourth Circuit has noted:

> Personality conflicts and questioning of job performance are unavoidable aspects of employment. They are an inevitable byproduct of the rough edges and foibles that individuals bring to the table of their interactions. Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict ... into an actionable claim of discrimination.

Hawkins v. PepsiCo, Inc., 203 F.3d 274, 282 (internal quotation marks and citation omitted). Summary judgment on this issue will be granted.

### D. Retaliation

As discussed above, Title VII prohibits discrimination by an employer against any individual because such individual "has opposed any practice made an unlawful employment practice" by Title VII, or "participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). In the absence of substantial, direct evidence of retaliation, an employee may establish a violation of Title VII by retaliation through use of the McDonnell Douglas framework discussed supra. See Ross v. Communications Satellie Corp., 759 F.2d 355 (4th Cir. 1985) ("The sequence of proof and burdens prescribed by [McDonnell Douglas] are applicable to retaliation cases under § 2000e-3 as well as to discriminatory treatment claims."), overruled on other grounds by, Price Waterhouse, 490 U.S. 228; Discrimination Law 673-77. To reiterate briefly, the plaintiff must first establish a prima facie case, which – with respect to retaliation – requires proof

> (1) that she engaged in protected activity; (2) that the employer took adverse employment action against her; and (3) [that] a causal connection existed between the protected activity and the adverse action.

McNairn, 929 F.2d at 980 (citation omitted). Once the plaintiff has made out a prima facie case, the employer has the opportunity to present a legitimate, non-discriminatory reason for the adverse employment action. See Evans, 80 F.3d at 959. If the employer does so, the presumption of discrimination drops from the case and the employee bears the burden of establishing that the reason proffered by the employer is a pretext for discrimination. See id.; McNairn, 929 F.2d at 980. The employee must do so by showing "both that the reason was false and that retaliation was the real reason for the challenged conduct."

Holmes v. West, 2000 WL 365400, *4 (4th Cir. 2000) (internal marks and citation omitted).

Plaintiff's second Charge of Discrimination, filed on August 26, 2006, contends that she was terminated by CHS in retaliation for filing her first charge. (Document No. 47-3 at 42). It is clear that filing a Charge of Discrimination with the EEOC is a protected activity, and her termination could certainly be considered an adverse employment action. Plaintiff, however, has not shown support for a causal connection between the protected activity and her termination. Plaintiff filed her first Charge in November 2005 and was terminated in July 2006 - over seven months later. The passage of time between those actions, coupled with the intervening patient complaints, rebut the suggestion of a causal connection between the protected activity and the termination.

Assuming, *arguendo*, that Plaintiff had established a causal connection, her employer has the opportunity to present legitimate, non-discriminatory reasons for the adverse action. Defendant here has presented sufficient evidence that Plaintiff's termination was based on a history of insubordination and patient complaints that culminated in Plaintiff's flat refusal to attend a follow-up counseling meeting, even after she was warned that such refusal was a terminable offense. Plaintiff in response has not presented an argument that Defendant's reasoning was false and that retaliation was its true motivation. Therefore, the undersigned finds that Plaintiff's claim of retaliation falls short and that summary judgment on this issue should be granted to the Defendant.

## IV. CONCLUSION

Throughout the proceedings of this case, the Court has been cognizant of Plaintiff's *pro se* status and has carefully viewed the facts and her motions in the most favorable

light. Courts traditionally hold pleadings by *pro se* parties "to less stringent standards than formal pleadings drafted by lawyers...." Haines v. Kerner, 404 U.S. 519, 520 (1972). The Fourth Circuit has recognized that "we must construe pro se complaints liberally." Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006) citing Hemphill v. Melton, 551 F.2d 589, 590-91 (4th Cir. 1977). Nevertheless, based on the foregoing analysis, the undersigned finds, even viewing the evidence in the light most favorable to the non-moving party, that a rational factfinder could not conclude that CHS' actions were discriminatory and therefore summary judgment in this matter is appropriate. Although the expense Defendants have been forced to bear in defending this action is regrettable, the undersigned in its discretion will not award costs and attorneys' fees against this *pro se* Plaintiff.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion for Summary Judgment" (Document No. 46) be **GRANTED**.

Signed: December 5, 2007

David C. Keesler
United States Magistrate Judge